318-0489. People of the State of Illinois, Afflee v. Delrick Rutherford. Appellant. Thank you. Um, let's see. Mr. McIntyre. Yes, Your Honor. You may proceed. Thank you, Your Honor. May it please the Court and Council. Of course, I represent Delrick Rutherford, the appellant. And we have, I guess, several groups of issues that I wanted to discuss in oral argument briefly. The first has to do with the, I think it's one discussion can can sort of serve for both. We have an argument about the sufficiency of the evidence, but folded into that, frankly, is an argument concerning whether or not the evidence of guilt was overwhelming. To summarize our argument concerning the sufficiency of the evidence, certainly reading the record, there is evidence of Mr. Rutherford's guilt. But what we're suggesting is that since the prosecution offered IPI 3.11, this jury was essentially instructed that anything that contradicted the in-court testimony could be considered only for the purpose of whether they believed what had been testified to in court and ought not to be essentially ought not to be considered as substantive evidence. And if that instruction applied to the 9-1-1 call and the comments to the police officer on the scene and then the witnesses' comments to the detective later, then that would appear to be the sole purpose of the contradictory testimony, which in terms of the witness, Krishna Washington, was all out of court. Now, that being said, there was also evidence from Delrick Jr., referred to as DJ. He had also testified in what I think you can see is a conclusory fashion that his dad had shot his mom, but also in his in-court testimony and in the corroborating audio that was offered, he also said he did not, neither did he see the shooting, nor did he see anything in his father's hand. So that in a nutshell is our argument that actually the evidence is insufficient because the evidence of guilt is all out-of-court statements and the jury was instructed to consider the contradictory out-of-court statements as impeaching rather than as substantive evidence. Now, we have also in the brief, and unless there are questions, I didn't want to detail it so much in argument, but in the briefs, we have also suggested that there were various evidentiary troubles with the admissions of out-of-court statements, even if they were sought to be admitted as substantive evidence. We're suggesting that any spontaneous declaration evidence is belied by the fact, with respect to certain of the evidence, that the witness, Christian Washington, seemed very calm, seemed very matter-of-fact, and that in terms, for instance, of the admission of the text that she sent to her sister after the shooting, that also would have taken time for reflection. But at the very least, if the court looks at this and says, well, no, the out-of-court statements by Christian Washington or some of them are substantive, then obviously, if that view is taken, there is sufficient evidence to support a conviction. That said, we're suggesting that it would be very unusual to have a case that, if the prosecution suggests that all the out-of-court statements are overwhelming, when essentially the in-court testimony of Christian Washington is that the shooter was shot. It was not Mr. Rutherford, certainly coming from one of the two alleged victims. Those observations at least certainly gives the jury something to contemplate, and frankly, a choice between two divergent scenarios, aided only by the testimony of Delrick Jr., that he understood that his father had shot his mother, but really didn't see anything. And that leads to me, I guess, to my second classification of what I want to discuss, and that had to do with the essentially informing the jury that Mr. Rutherford had previously been convicted of a forcible felling. That is the kind of thing that essentially is, you know, as your honors, I'm sure have seen numerous cases, that's the skunk at the garden party. When you have evidence of a previous felony, and especially as I observed in the briefs, especially when the jury isn't told that that's going to be limited to whether or not a particular element has been proven, or at least is not so instructed by the court. There is certainly a strategy that can be followed in cases like that, and in cases where that possession of weapon by a felon is appended on to other charges. It's our suggestion that in this particular case, even though it's, you know, it's considered, broadly, it's considered in the realm of strategy, but in this particular case, the strategy revealed in the court below was counsel thought, well, what the heck, Mr. Rutherford will testify, and so it doesn't really matter if I stipulate that he was convicted of a forcible felony. And I would suggest that that's not a cohesive strategy that competent counsel would have followed. There is some troubles, I would suggest, one of which is that the posture of the record at the time the stipulation was made, and the time opening statements, as I recall, were given to the jury, was that there was still a question of whether the previous involuntary manslaughter charge would be admitted as impeachment. It did meet the Montgomery 10-year rule, and then so Judge Lyons' decision on that regard, essentially what he had to do, well, is it, you know, is the probative value outweighed by the prejudicial effect of involuntary manslaughter when a person's on trial for attempted murder and associated charges. And so it's our suggestion that if that was the strategy that was being followed, it, you know, frankly, it was a bad strategy, and it was a strategy that falls below what effective counsel ought to have done. It's our suggestion that, especially in this case, where severance of what is either a Class 3 or a Class 2 felony from Class X felonies would almost seem to be dictated, especially when Judge Lyons apparently was willing to follow a procedure whereby the jury would get all the other charges to be heard. They would return their verdict on those charges, and then once they came back, then the jury would be told, by the way, we now also have unlawful use of firearm by felon. There's going to be additional proof and proof of the previous conviction of a felony, and then you'll go out to deliberate that again, so you don't even have to worry about, gee, I like, you know, a situation where you take this jury that I have right now, and so I'll put in the UUFF. We'll try it to that jury, because what if we get a, you know, what if we get a crummy jury later? You don't have to engage in that sort of thinking if you're defense counsel. Mr. McIntyre, on that issue, I have a question. Does it matter who injected the word forcible into the record? Because as I understand it, defense counsel said he was acknowledging the defendant has a prior felony conviction. He didn't inject the word forcible into the record, but the judge did. The judge told the jury they wouldn't get a copy of the conviction, but was just telling them he had been convicted of forcible felony. Is my understanding of the record correct? As I recall the record, defense counsel said he was willing to stipulate to a felony, and I thought it had been, although I tried to bring up the record on my Research Illinois link, and it told me I couldn't see it. But my recollection was that it was either then that the prosecutor or the judge said, well, you'll have to stipulate that it's a forcible felony. It may have been the stipulation. That may have been the stipulation. But when it came time for the jury to hear or receive evidence, I'm not so sure that either attorney used the word forcible. I'm just wondering. I think defense counsel protected his client by saying we acknowledge it was a felony, but I'll look at the record. And in that regard, if that is the record, then I would suggest yes, because what we've argued and we thought at any rate that he had agreed to stipulate that it was a forcible felony. But again, if not, then I still think we have a weighty argument that, well, number one, actually, that involuntary manslaughter isn't a forcible felony, because if it were, then it would be a predicate for first-degree murder, where second-degree murder is not, because the legislature at least had the sense to say, you know, in other words, let's stay away from that oddity in the law where we're going to charge you with second-degree murder and then call it felony murder because it's a felony and somebody died. We don't think that that's there. And also, Judge, and I know there are cases, of course, we've cited like the People v. Strong, who, by the way, I represented Bobby Strong once, although not on that particular decision, but, you know, where if counsel asks, then there can be a severance of the UUFF so that the jury doesn't hear anything like that. And again, a severance is a strategy area, but there ought to be, it's our suggestion that the cases say there ought to be a cohesive strategy and there ought to be a strategy that is served by leaving the counts together. The strategy, I guess, would be, well, you know, we don't want to try the case to two different triers of fact, but when the judge is willing to say, no, we'll actually, we'll use the same jury and we'll still bifurcate the trial of the counts, then frankly, at least the wisdom of leaving the counts together so that the jury can hear about the previous felony eludes me, because then at least you can, you know, you can hold, you can try the case without any knowledge of a felony. And if the defendant, as he did in this case, once he hears, know that demand slaughter is coming in for impeachment, decides not to testify, then you at least, and in this case, you, what you could have is essentially a recanting victim and another victim, at least of one of the counts who could, whose testimony isn't the most firm. And you could argue that case to the jury with your client off the stand, but would sit with a recanting victim and frankly be able to try the case without the jury knowing that this is a convicted felon. The, and the, you know, if I can, the third area I wanted to get into, I see my time is turning up, is the severance of the counts where Delred Jr. was not a victim versus the severance of counts where he is, but I'll conclude. Thank you. Well, Justice McDade, if you'll indulge, I have one more question for Mr. McIntyre. Mr. McIntyre, can you point out the evidence in the record that established or allowed the jury to find the defendant knew his child was in the backseat? I don't recall anything specifically from the record that, that tells us that. I think, I think if I were the prosecutor anyway, I would, I would merely argue that, that, you know, from Mr. Rutherford's point of view, he might be able to see that, of course, depending on where he was standing. Yeah, this happened at night. It was dark out, I think, but I appreciate your answer. Thank you. Thank you. Thank you, Mr. Nicolosi. Thank you, Your Honors. Good afternoon. May it please the court. Mr. McIntyre, my name is Justin Nicolosi. I represent the state of Illinois in this case, the Appalee. Starting at the top with the first issue, Mr. McIntyre discussed talking about the sufficiency of the evidence. The state submits that an irrational trier fact could have convicted defendant of the charged offenses based on the evidence presented. Mr. McIntyre discussed that a decent amount of the evidence came in via out of court statements that were used to prove, help prove the state's case. The state submits that it's not quite that simple. There's, there's more evidence that pointed to the defendant's guilt. Of course, the defendant, defense counsel mentioned Delrick Jr. statements. He said, matter of factly, that dad shot mom. That's obviously significant evidence. And regarding Alexis Washington, the victim, the shooting victim, Krishna's sister, her text message, her text message conversation with Krishna was actually admitted as an exhibit. I believe it was exhibit 22. And she confirmed that that was the conversation that she had with her sister. And that conversation included texts from Krishna that Delrick had shot her. So that's obviously significant substance of evidence. And I don't, I don't remember the record specifically, but I don't believe there were objections to the out of court statements in this case that were pretty, for lack of a better word, damning against Krishna and her credibility in court. Those statements included Krishna telling Officer Flynn and the 911 operator and her sister that defendant had shot her. That included statements from Krishna saying that to the ER nurse and to the EMTs that her ex-boyfriend had shot her. Those are obviously all very significant statements in this case. There's no denying that. But the state does not believe that there was an objection to those statements. So the jury could use those however they would like. And moreover, the state submits that Krishna had really significant credibility issues. Her story didn't really make sense. You know, her story was when she testified that the defendant, after the shooting, she said the defendant didn't shoot him. The defendant after the shooting got in his car and fled. He never went to the hospital to check on Krishna or her son, never made it home later. The state submits that these just aren't the actions of somebody that's innocent. Flight, of course, is evidence of consciousness of guilt. If Krishna was to be believed that Delrick, the defendant, did not do the shooting, it makes absolutely no sense that he wouldn't, that he would, number one, flee the scene. And number two, that he wouldn't check in later on how his girlfriend and son are doing. Any rational fact would pretty much discount that story outright. That's just not what somebody does in a situation like that, if they weren't the shooter. It, of course, makes absolute sense that this man was the shooter. That's why he fled. That's why he didn't, he didn't come back. And then the jury, this jury clearly saw that. And I think any rational jury would have concluded that as well. Mr. Nicolosi, I would agree with you that there's no doubt about him being the shooter. I'd like to ask you a question about intent. He was charged with and convicted of attempted murder. That's intent to kill? Yes. What was the evidence of intent to kill? Your Honor, as I wrote my brief, the intent to kill can be established by all the surrounding evidence of what happened. And there are actually cases that say that the mere act of firing a gun at someone else supports an intent to kill. And the fact, in this case, the defendant fired at a very close range. And, you know, the defendant in his brief argued that the fact that he didn't continue his attack, even though the vehicle was incapacitated, that contained the person he was shooting at, that that was somehow evidence that he didn't intend to kill. If he intended to kill, he would have finished the job. But there are cases, and in my argument, I think in my brief, satisfies it quite succinctly that he doesn't, the defendant doesn't have to continue his attack in order to, for the state to establish that he intended to kill. He fired four shots. He could have ran out of ammunition. He could have just come to his senses and left because he realized what he had done. And I think the fact that she testified that they were still together, they were still a couple during her testimony shows that this man could have, you know, snapped, come to his senses and left. So the fact that, the fact that he shot this person at close range is evidence in and of itself of an intent to kill. But, you know, the fact is he probably just an unskilled shooter. And the fact that she survived that attack is just dumb luck, really. So the testimony was that she, her injury was a grazing injury? Yes. It didn't, it wasn't a through and through anywhere? It was just a grazing? I believe you're right. How big was the car? I think it was just a passenger sedan, if I remember correctly. But again, I... And the testimony was that he came right up to the window where she was, right? Yes. Yeah, he was very close range. Yes. It's kind of hard to miss if you really intend to kill somebody. Well, but if he's really just trying to scare her, I don't think he would have hit her at all. I mean, I refuse, I don't believe the jury would think that this man was such a, an exceptional shot that he was able to, to put the bullet, you know, right next to her neck and graze her. If this was an inch to the left, two inches to the left, she probably wouldn't have made it. I think it's a stretch to believe that he's such a good shooter that he could place these bullets wherever you want. I think in the heat of that moment, that was obviously a very intense moment in his life. And to expect him to be able to maybe fire as accurately as someone who really, you know, wants to kill somebody. I don't know if that's a realistic expectation. I think it's very explicable that he fired erratically. These are relevant questions though, right? Of course, of course. Because intent is an element of the crime. Absolutely. And Your Honor, I, again, point to my brief in the section where I explained that there are lots of cases that kind of deal with, I was actually a little surprised that there were so many cases on situations that really are very close to this and that the intent to kill can be established merely by shooting at another individual. I think those cases are very applicable and that the state established that defendant did have an intent to kill. Okay, but we're supposed to consider all of the circumstances, the totality of the circumstances? Sure. Okay. Thank you. Yep. Moving on. So, in conclusion on Issue 1, the state submits that the evidence was sufficient to establish defendant's guilt on the charged offenses. Counsel also discussed the issue about the forcible felony and the state submits that the record establishes that defense counsel stipulated that this was a forcible felony. The counsel agreed that that's what the involuntary manslaughter prior conviction established and the characterization of it as a forcible felony. The counsel agreed with it. So that's why that proceeded in that manner. And of course, Mr. McIntyre necessarily went into the ineffective assistance aspect of that decision. For stipulating to it and for failing to move to sever. Regarding the stipulating to it, the state submits that all of these charges being tried together, the jury was going to learn that the defendant had been convicted of a felony. And given the strong evidence of his guilt, the state would submit that the addition of the word forcible really taint the jury in any significant manner. Again, they were already going to learn. If there had been no stipulation to the fact that it was a forcible felony, would it have been admissible? Because at that point, it would not have met the would have been beyond the 10 year rule. Well, I don't remember, Your Honor. Honestly, I don't remember covering the 10 year aspect of this. Maybe Mr. McIntyre does in his brief. Regarding whether or not that was a forcible felony, I believe counsel's argument, again, he'll correct me if I'm wrong, focused on whether it met the definition of a forcible felony based on 720 ILCS 5 backslash 2-8 and the residual clause. I focused my analysis on that. So honestly, I don't remember. I guess my point is, if it's not a forcible felony, is there any reasonable trial strategy for stipulating to it being a forcible felony? No, no, there is not, Your Honor. But regarding the ineffective assistance analysis, I focused on my brief on the prejudice prong, of course. Because, you know, even if, of course, if counsel provides deficient performance, it's not an effective assistance under Strickland if the defendant is not prejudiced by the decision. Again, if, considering that all of them are tried together, the jury was going to find out that he was convicted of a felony to prove that, to prove count six, and that coupled with the overwhelming evidence of guilt leads to the conclusion the state submits that the defendant was not prejudiced by counsel's decision. If we're talking about counsel's decision of failing to move to sever count six, the forcible felony, which involved the forcible felony, the state submits that counsel's decision was reasonable at the time. We need to look at the time that counsel made the decision to go forward with not, yeah, his argument against bifurcation was that he really expected his client to testify. He was going to testify. And the state submits that it was a reasonable decision at the time. If you thought counsel was going to testify and this conviction was going to be introduced as impeachment during his testimony, then counsel's argument against bifurcation was reasonable because that's what he expected to happen. State submits, in hindsight, obviously that turned out not to be all that reasonable because obviously the defendant didn't testify. But once again, if this court finds his performance deficient in that manner, we got to move to the prejudice prong and the defendant's just not prejudiced by that decision. Again, the overwhelming evidence of his guilt made it unlikely that the jury learning about the forcible nature of that conviction just did not prejudice the defendant, the state submits. Mr. Nicolosi, did the indictment or information allege that it was a forcible felony? I don't believe so, but I don't know specifically. I think the relevant count is count six. Yes. And I'm thinking in terms of sentencing and apprendi, if the court was going to rely on the fact that there was a prior forcible felony to enhance punishment due to the presence of a firearm, would you not agree that the jury had to contemplate that and weigh in? I would think so. Yes, yes. But you're not sure whether forcible felony is in the language of count six. I honestly don't know if it is off the top of my head. I'm sorry. But even if I'm sorry to interrupt your train of thought. No, it's OK. My train of thought usually isn't rock solid anyway, so it's not. That's OK. But even if let's say this court finds that the consideration of the forcible felony was error regarding sentencing of that count, the state submits that it would still be the class two felony of unlawful possession of a weapon by a felon. Because while the state decided to go forward with the aggravating factor or the enhancement factor of the forcible felony, the state also had another option that it made it that made it a class to the forcible aspect. It also made it a class two if the defendant had a prior conviction. The record, I believe, establishes that defendant did have a prior conviction for the same offense. So it would still be a class two anyway, if the if the court gets to that aspect. I went over that in my brief as well. With that, the state submits that this court requested this court affirms the defendant's convictions, all of his convictions and sentences in this matter. And if there are any other questions, I'd be happy to answer them. Thank you. Thank you, Mr. Nicolosi. Thank you, Mr. McIntyre. Yes. Thank you, Your Honors and Counsel. I want to quickly observe that as far as Mr. Rutherford fleeing the scene, only that Miss Washington attempted to flee the scene as well. And we know she wasn't doing the shooting she was being shot at. And so it certainly wouldn't be unreasonable if someone else were the shooter. It would not be unreasonable for Mr. Rutherford to flee the scene. And another observation I would like to make concerning the lack of objection to the to the previously essentially to the prior inconsistent statements is that if if they're coming in for a limited purpose and the jury is going to be told at the end that that the statements are admitted for a limited purpose. Then then I suppose there really isn't isn't an objection that defense counsel may. There is some discussion, I think, in a couple of sentences in the record where the where the judge wants. I think, as I recall, the prosecutor says it's for impeachment. And the judge wants to say, oh, no, it's for is for substance. But then there's they sort of touch on that and move on to other things. Mr. McIntyre, wouldn't you agree that that spontaneous statement, the 911 call could have been admitted as substantive evidence? Yes, I would. But it's unclear that the state offered it for that reason. Is that what you're saying? That's my that's my suggestion. And and and. And it's one thing that if it's unclear from sort of from start to finish, but it's another thing that when you when the jury is instructed, by the way, these in contradictory out of court statements, those are in for you for impeachment only. And that that also in terms of the sufficiency of the evidence, we also have included, although I know there are cases to the contrary, we have included those cases in which the courts have said, even though one fifteen ten point one testimony, you know, hearsay can form the basis of a conviction. But that also the courts have said, look, when when we think the person that made those statements has significant credibility problems, they've gone ahead and found, at least in certain instances, that that that's not good enough to support a conviction. And so I guess it is at least kind of a two edged sword in this case. You know, if the state wants to argue in which they did, I think significantly at trial that Miss Washington was was a liar at trial, then, you know, then then I guess the question of any statement she makes become suspect. The reason I asked that question is I'm balancing in my brain, the harmlessness of that particular statement, if it would have come in. Otherwise, as an exception to the hearsay rule. However, your point is well taken that it's unlikely the state would have offered it for that purpose. They seemed oblivious to it. So I appreciate your answer. Okay, thank you. I also, by the way, and I, you know, well, and I don't think it's responsive to counsel's argument. So I, I will refrain from what I was about to say, because I don't think it's proper rebuttal. But I would also suggest in response to Justice McDade's question of counsel that there is an intent element. I do think it's somewhat intriguing that Judge Lyons at least had the impression that there wasn't an intent to to kill. But when especially when if there is an intent question here, then, frankly, putting a thumb in the scales of a force of the jury being told there's a forcible felony, you know, goes to, you know, goes to the integrity of the process. I think this is a much more the integrity of this trial is at a much greater level when when the jury isn't informed that there's a prior felony or that if it if it had been admitted under Montgomery, at least there, well, there would be a limiting instruction and or could be. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in recess for a panel change.